# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF IDAHO

---

**In Re:**
**Miguel Juarez and Heidi**
**Lizeth Juarez,**

**Bankruptcy Case**
**No. 16-40560-JDP**

                    **Debtors.**

---

### MEMORANDUM OF DECISION

---

**Appearances:**

Paul Ross, Paul, Idaho, Attorney for Debtors.

Thomas D. Smith, SERVICE & SPINNER, Pocatello, Idaho, Attorney for creditor Midland Funding, LLC.

Kathleen A. McCallister, Meridian, Idaho, Chapter 13 Trustee.

## *Introduction*

In this chapter 13[1] case, Debtors Miguel Juarez and Heidi Lizeth

Juarez ("Debtors") have objected to the proof of claim filed by creditor

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 – 9037, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

MEMORANDUM OF DECISION – 1

Midland Credit Management, Inc. ("Midland Credit") as the agent for

creditor Midland Funding LLC ("Midland Funding").  Dkt. No. 44.

Midland Funding responded to the objection.  Dkt. Nos. 50.  The Court

conducted an evidentiary hearing on February 21, 2017, and took the

objection under advisement.  After the hearing, Midland Funding and

Debtors filed briefs.  Dkt. Nos. 81, 82.

The Court has considered the record, evidence, testimony, and

arguments of the parties, as well as the applicable law.  The findings,

conclusions, and decision in this Memorandum resolve the objection.  Fed.

R. Bankr. P. 7052; 9014.

### *Facts*

On June 24, 2016, Debtors Miguel Juarez and Heidi Lizeth Juarez

("Debtors") filed a chapter 13 bankruptcy petition.  Dkt. No. 1.  In their

schedule E/F, they listed a debt owed to Synchrony Bank, account number

ending in 5181, in the amount of $3,166.  Ex. 100.  Miguel[2] Juarez testified

---

[2]  For clarity, the Court will occasionally refer to the Debtors by their first
names.  No disrespect is intended.

MEMORANDUM OF DECISION – 2

that this was a credit card debt incurred to pay for dental services. The schedules indicate the account was opened on March 1, 2016, and was last active on May 29, 2016. Dkt. No. 1. The debt was not listed as contingent, unliquidated, or disputed. *Id*.

On October 5, 2016, a proof of claim ("POC") was filed for Midland Funding, signed by a representative of Midland Credit. Claims Reg. 8-1. On October 11, 2016, Debtors filed an objection to the POC. Dkt. No. 44. Midland Funding, "its assignees and/or successors in interest" filed a response to the objection through counsel. Dkt. No. 50. An amended proof of claim ("Am. POC") was filed on October 18 for Midland Funding, once again, signed by an employee of Midland Credit. Claims Reg. 8-2; Ex. 200.[3] The Am. POC was identical to the POC, except that it had numerous documents appended to it. The Am. POC, on its face, asserted that Debtors owed $3,166.09. It further represented that "[o]ther names the creditor used with the debtor" were "Synchrony Bank/Care Credit,"

---

[3] Only pages 1-17 of Ex. 200 were admitted into evidence at the hearing; pages 18-22 of that exhibit were not admitted.

MEMORANDUM OF DECISION – 3

and that the claim was acquired by Midland Funding from Synchrony Bank. *Id*. at 1. The Am. POC indicated that notices and payments regarding the claim should be sent to "Midland Credit Management, Inc. as agent for Midland Funding LLC". *Id*. It listed the charge-off date for the debt as "07/03/2016", and finally, the Am. POC listed "Synchrony Bank" as both the "Original Creditor" as well as the "creditor at date of last transaction." *Id*. at 4.

As noted above, Debtors objected to the allowance of the Midland Funding claim represented by the Am. POC. While they acknowledge that they owe the debt to Synchrony Bank, they argue that because Midland Funding has provided no adequate documentation to show that it "owns" the claim, it has no right to participate in distributions to creditors in this case.

### *Analysis and Disposition*

A.    Objection to Admission of Ex. 201

Before examining the merits of the parties' arguments regarding

MEMORANDUM OF DECISION – 4

allowance of the Midland Funding claim, the Court must first resolve an

evidentiary issue.  During the hearing, Midland Funding offered the

"Affidavit of Kelly Schellig" in evidence, Ex. 201, to which Debtors

objected.  The parties argued their respective positions, and the Court took

under advisement whether the exhibit should be admitted.

Debtors' evidentiary objection to the admissibility of Ex. 201 is

threefold.  First, they contend the affidavit contains inadmissible hearsay;

second, that the exhibit runs afoul of the best evidence rule; and finally,

Debtors argues that Rule 9017 forbids its admission.

*1. Hearsay*

Debtors argue that the Schellig affidavit contains hearsay, and is

inadmissable unless it fits within one of the exceptions to the rule

forbidding admission of hearsay.  Federal Rule of Evidence 801 explains

that a statement is hearsay if "(1) the declarant does not make [it] while

testifying at the current trial or hearing; and (2) a party offers [it] in

evidence to prove the truth of the matter asserted in the statement."  Fed.

MEMORANDUM OF DECISION – 5

R. Evid. 801(c).

The Schellig affidavit, Ex. 201, does indeed contain hearsay.  In it, the affiant explains how she has access to electronic records maintained by Midland Credit, and that those records consist of data acquired from the seller, presumably Synchrony, obtained when Midland Funding purchased the account, as well as records generated by Midland Credit in connection with servicing the account.  She then relates information about the Midland Funding/Midland Credit corporate structures, as well as Midland Funding's practice of purchasing portfolios of delinquent accounts from original creditors, and its agreement with Midland Credit to service those accounts on Midland Funding's behalf.  *Id.*

These many statements are clearly hearsay, as Ms. Schellig was not present in court to testify at the hearing, and the information contained in her affidavit is offered to address the heart of the issue at hand, which focuses on the connection between both Synchrony and Midland Funding, and between Midland Funding and Midland Credit.  The statements in the

MEMORANDUM OF DECISION – 6

affidavit are therefore inadmissible unless a statute or rule provides an

exception.  *See* Fed. R. Evid. 802.

The only exception to the hearsay rule potentially applicable in this

context, and the only one cited to support admission by Midland Funding

at the hearing, deals with "records of a regularly conducted activity."  It

provides that the following are not excluded as hearsay, regardless of

whether the declarant is available as a witness:

> **(6) Records of a Regularly Conducted Activity.**  A record of
> an act, event, condition, opinion, or diagnosis if:
>
>> (A) the record was made at or near the time by — or
>> from information transmitted by — someone with
>> knowledge;
>> (B) the record was kept in the course of a regularly
>> conducted activity of a business, organization,
>> occupation, or calling, whether or not for profit;
>> (C) making the record was a regular practice of that
>> activity;
>> (D) all these conditions are shown by testimony of the
>> custodian or another qualified witness, or by a
>> certification that complies with Rule 902(11) or (12) or
>> with a statute permitting certification; and
>> (E) the opponent does not show that the source of
>> information or the method or circumstances of
>> preparation indicate a lack of trustworthiness.

MEMORANDUM OF DECISION – 7

Fed. R. Evid. 803(6).  As can be seen, in order for a hearsay document to be admissible as a "business record", it must be shown that it was (1) made during a regularly conducted business activity, (2) kept in the "regular course" of that business, (3) that it is "the regular practice of that business to make the memorandum," (4) and made by a person with knowledge or from information transmitted by a person with knowledge.  *City of Long Beach v. Standard Oil Co. of Cal.*, 46 F.3d 929, 937 (9th Cir. 1995) *(*citing *Clark v. City of Los Angeles*, 650 F.2d 1033, 1037 (9th Cir. 1981)).

Debtors point out that the Schellig affidavit was not prepared in the ordinary course of the Midland Funding or Midland Credit business, but was instead, generated in connection with this litigation.  Indeed, to the Court, it seems apparent that the affiant reviewed the company records in direct response to this litigation.  However, the references in the affidavit to the records suggest they are merely the documents related to the account activity for Debtors' credit card account which was originally owed to Synchrony, and which were likely kept in the ordinary course of

MEMORANDUM OF DECISION – 8

business.  Even so, it is unclear whether those regularly-generated and maintained records and documents would provide any evidence of any connection between Synchrony and Midland Funding or Midland Credit.

At bottom, the Court concludes that Midland Funding has not adequately demonstrated that the business record exception to the hearsay rule applies, and therefore the Schellig affidavit, Ex. 201, is inadmissible hearsay.

*2.  Best Evidence Rule*

Debtors' second objection to the Schellig affidavit is also well-taken. Under Fed. R. Evid. 1002, "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise."  Ms. Schellig states that "[Midland Credit] holds the computer records and account information for accounts purchased by Midland [Funding]."  Ex. 201.  She also testifies in the affidavit about the corporate structure of the Midland entities, the purchase of certain delinquent accounts, apparently including Debtors',

MEMORANDUM OF DECISION – 9

and that Midland Funding has authorized Midland Credit to act on

Midland Funding's behalf to collect on those delinquent accounts. While

not referencing specific documents in the affidavit, the Court infers from

Ms. Schellig's statements that original documentation exists evidencing the

purchase of the delinquent accounts, as well as the authorization for

Midland Credit to service those accounts on Midland Funding's behalf.

In order to satisfy Fed. R. Evid. 1002, Midland Funding must

produce either the original documents, or at least admissible "duplicates"

of the records, establishing the purchase of Debtors' account, as well as the

servicing agreement. *See* Fed. R. Evid. 1003 (authorizing admission of

duplicates) and 1001(e) (defining "duplicate"). While perhaps Ms. Schellig

could have properly authenticated copies of the relevant documents,

Debtors are correct that the best evidence rule prevents Ms. Schellig from

establishing those facts by testimony without the supporting

documentation.

MEMORANDUM OF DECISION – 10

### 3. *Rule 9017*

Resolution of an objection to a proof of claim is a contested matter within the meaning of Rule 9014. *Lundell v. Anchor Const. Specialists, Inc.,* 223 F.3d 1035, 1039 (9th Cir. 2000). That Rule requires that, where facts are in dispute, witness testimony shall occur in open court, not via affidavit, unless a statue or rule permits. Midland Funding has not identified any rule or statute to support its submission of Ms. Schellig's testimony at the contested hearing by affidavit.

More particularly, Rule 9014(d) instructs that testimony in contested matters be given in the same manner as in an adversary proceeding. Rule 9017, the rule governing witness testimony in adversary proceedings, incorporates, among others, Civil Rule 43(a), and mandates that: "At trial, the witnesses' testimony must be taken in open court unless a federal statute, the Federal Rules of Evidence, these rules, or other rules adopted by the Supreme Court provide otherwise." However, Civil Rule 43(c) allows that "[w]hen a motion relies on facts outside the record, the court

MEMORANDUM OF DECISION – 11

may hear the matter on affidavits or may hear it wholly or partly on oral

testimony or on depositions."  The Advisory Committee Note to Rule 9014

(the Rule governing contested matters in bankruptcy) explains:

> if the motion cannot be decided without resolving a disputed
> material issue of fact, an evidentiary hearing must be held at
> which testimony of witnesses is taken in the same manner as
> testimony is taken in an adversary proceeding or at a trial in a
> district court civil case.  Rule 43(a), rather than Rule 43(e)
> [now Rule 43(c)], Fed. R. Civ. P. would govern the evidentiary
> hearing on the factual dispute.  Under Rule 9017, the Federal
> Rules of Evidence also apply in a contested matter.  Nothing
> in the rule prohibits a court from resolving any matter that is
> submitted on affidavits by agreement of the parties.

Here, because there was no agreement reached by the parties

allowing submission of testimony via affidavit, Rule 9017 and Civil Rule

43 operate to prohibit Midland Funding's use of Ms. Schellig's affidavit.

*See In re Caviata Attached Homes, LLC*, 481 B.R. 34, 44 (9th Cir. BAP 2012).

While Midland Funding contends that the Ninth Circuit's decision

in *Adair v. Sunwest Bank (In re Adair),* 965 F.2d 777 (9th Cir. 1992), condones

use of the affidavit here, the Court disagrees.  While the bankruptcy court

in *Adair* employed a local rule to permit a witness's direct testimony to be

MEMORANDUM OF DECISION – 12

submitted by affidavit, it also required that the affiant be available at the

hearing for live cross-examination and redirect.  *Id*. at 779.  While the

Ninth Circuit approved the bankruptcy court's local rule authorizing this

procedure,[4] that is not what Midland Funding proposed to do here.

Instead, it sought to submit the Schellig affidavit in evidence without

offering Debtors an opportunity to cross-examine the witness.  That

approach is fundamentally unfair to Debtors and impairs the Court's

ability to determine the contested facts.  *Adair* is distinguishable.

　　　　For the reasons explained above, the Affidavit of Kelly Schellig, Ex.

201, is inadmissible and will not be considered by the Court in resolving

Debtors' objection to the Am. POC.

B.　　Standards for Objections to Proofs of Claim

　　　　Under § 502(a), when a creditor files a proof of claim, its claim is

"deemed allowed, unless a party in interest . . . objects."  *See In re Ricks*,

10.4 I.B.C.R. 104, 105 (Bankr. D. Idaho 2010) (citing *In re Fabos*, 03.3 I.B.C.R.

---

[4]  This Court has adopted no similar local rule.

MEMORANDUM OF DECISION – 13

60, 61 (Bankr. D. Idaho 2003)).  When a party in interest files an objection,

the claim will be allowed unless one of nine exceptions set forth in § 502(b)

applies, including that "such claim is unenforceable against the debtor and

property of the debtor, under any agreement or applicable law[.]"

§ 502(b)(1); *see Travelers Cas. and Sur. Co. of America v. Pacific Gas & Elec. Co.*,

549 U.S. 443, 449-50 (2007).

Rule 3001(b) provides that a proof of claim "may be executed by the

creditor or the creditor's authorized agent except as provided in Rules

3004 and 3005."  And Rule 3001(f) provides that a properly-filed proof of

claim constitutes *prima facie* evidence of the validity and amount of the

claim, and that the burden of presenting evidence sufficient to overcome

the presumption of validity then rests on the party objecting to the proof of

claim.  *Spencer v. Pugh (In re Pugh)*, 157 B.R. 898, 901 (9th Cir. BAP 1993); *In

re Ricks*, 10.4 I.B.C.R. at 105.  If a party objects to a proof of claim, the

bankruptcy court must determine and allow the amount of the claim as of

the petition date.  § 502(b); *In re Morrow*, 03.2 I.B.C.R. 100, 101 (Bankr. D.

MEMORANDUM OF DECISION – 14

Idaho 2003).

C.    Analysis of Debtors' Objection

Debtors object to the Midland Funding Am. POC, filed by Midland

Credit, because it fails to include documentation concerning the affiliation,

authority, relationship, transfer, or assignment of the debt to Midland

Credit or Midland Funding from Synchrony Bank.

Midland Funding counters that any failure to include

documentation is not a proper grounds for disallowance of its claim, as

this claim is founded upon a revolving line of credit for which specific

documentation rules apply pursuant to Rule 3001(c)(3).  Midland Funding

contends it has complied with those special requirements in Rule

3001(c)(3), and thus its Am. POC enjoys *prima facie* validity.

Rule 3001(c)(3) provides:

(3) Claim based on an open-end or revolving consumer credit
agreement

> (A) When a claim is based on an open-end or revolving
> consumer credit agreement — except one for which a
> security interest is claimed in the debtor's real property

MEMORANDUM OF DECISION – 15

— a statement shall be filed with the proof of claim, including all of the following information that applies to the account:

> (i) the name of the entity from whom the creditor purchased the account;
> (ii) the name of the entity to whom the debt was owed at the time of an account holder's last transaction on the account;
> (iii) the date of an account holder's last transaction;
> (iv) the date of the last payment on the account; and
> (v) the date on which the account was charged to profit and loss.

(B) On written request by a party in interest, the holder of a claim based on an open-end or revolving consumer credit agreement shall, within 30 days after the request is sent, provide the requesting party a copy of the writing specified in paragraph (1) of this subdivision.

Subsection (c)(3) to Rule 3001 became effective on December 1, 2012.

The comments to this addition to the existing Rule explain that:

paragraph (3) specifies information that must be provided in support of a claim based on an open-end or revolving consumer credit agreement (such as an agreement underlying the issuance of a credit card).  Because a claim of this type may have been sold one or more times prior to the debtor's bankruptcy, the debtor may not recognize the name of the person filing the poof of claim.  Disclosure of the information required by paragraph (3) will assist the debtor in associating

MEMORANDUM OF DECISION – 16

the claim with a known account.  It will also provide a basis
for assessing the timeliness of the claim.  The date, if any, on
which the account was charged to profit and loss ("charge-
off" date) under subparagraph (A)(v) should be determined in
accordance with applicable standards for the classification
and account management of consumer credit.  A proof of
claim executed and filed in accordance with subparagraph
(A), as well as the applicable provisions of subdivisions (a),
(b), (c)(2), and (e), constitutes prima facie evidence of the
validity and amount of the claim under subdivision (f).

Rule 3001, Advisory Committee's Note (2012).

The Court agrees with Midland Funding that the Am. POC complies

with Rule 3001(c)(3)(A).  The Am. POC indicates that Midland Funding

acquired the claim from Synchrony Bank, that Synchrony Bank was the

creditor at the date of the last transaction with Debtors, that the date of the

last transaction was July 3, 2016, and that the "charge off date" was July 3,

2016.  The date of the last payment on the account was left blank in the

Am. POC because, apparently, Debtors never made a payment on the

account.  The Am. POC also complies with the other requirements of Rule

3001.  Thus, pursuant to Rule 3001(f), the Am. POC enjoys *prima facie*

validity.

MEMORANDUM OF DECISION – 17

As such, in order for Debtors' objection to have merit, they must either show that the requirements of Rule 3001(c) have not been met, and therefore the claim is not *prima facie* valid, or, if the Am. POC is presumptively valid, that presumption is overcome via evidence that Midland Funding does not own the debt.

As to the first avenue for challenging the claim, it is important to first observe that Debtors do not dispute that the debt is owed.  They listed the debt to Synchrony Bank in their schedules, including the corresponding account number.  But Debtors remind the Court that merely scheduling the debt does not alone establish that Midland Funding has the authority to collect it.  However, as stated above, a creditor's compliance with the requirements of Rule 3001(c)(3) establishes an evidentiary presumption of that proof of claim is valid.  In other words, Debtors' scheduling of the debt gives additional credence to the validity of the Am. POC.  The scheduled debt's reference to Synchrony Bank, the inclusion of the same digits of the account number, as well as the similarity

MEMORANDUM OF DECISION – 18

in the amount of the debt, lend support for the validity of Midland

Funding's Am. POC, as it contains most of the same information.  The Am.

POC identifies the scheduled creditor, and reflects the same amount of

debt, nearly to the penny.  In this way, Debtors' schedules  constitute

evidentiary admissions that help establish the validity of the Midland

Funding claim.  Fed. R. Evid. 801(d)(2); *In re Heath*, 331 B.R. 424, 431 (9th

Cir. BAP 2005).

More to the point, Debtors contend that the Am. POC is not entitled

to the presumption of validity because Midland Funding did not comply

with Rule 3001(c)(3)(B).  Debtors contend that the objection they filed to

the POC effectively constitutes a written request for a copy of the writing

evidencing the transfer of the debt referenced in Rule 3001(c)(3)(B), and

that such writing is necessary to demonstrate that Midland Funding and

Midland Credit have the authority to enforce the claim against Debtors

under the agreement or applicable law.  *See* § 502(b)(1).  Not so.

While Debtors contend that Midland's Am. POC does not comply

MEMORANDUM OF DECISION – 19

with Rule 3001(c)(3) because it does not include the writing required to

show the claimant's authority to enforce the claim under Rules 3001(b),

3001(c)(1), and 3001(e)(1), Rule 3001(c)(3) negates any requirement that a

claimant comply with Rule 3000(c)(1)[5].  On this point, the Advisory

Committee instructs that:

> [t]o the extent that paragraph (3) applies to a claim, paragraph
> (1) of subdivision (c) is not applicable.  A party in interest,
> however, may obtain the writing on which an open-end or
> revolving consumer credit claim is based by requesting in
> writing that documentation from the holder of the claim.

Fed. R. Bankr. P. 3001, Advisory Committee Note (2012); *see also* 9 COLLIER

ON BANKRUPTCY ¶ 3001.RH[6] (Alan N. Resnick & Henry J. Sommer eds.,

16th ed.) ("The amended rule excepts a claimant with a claim based on an

open-end or revolving consumer credit agreement from the requirement of

Rule 3001(c)(1).  No copy of a writing must be filed.  However, the

claimant must file a statement with the proof of claim that contains specific

---

[5]  Rule 3001(c)(1) provides, in pertinent part, that "*[e]xcept for a claim governed by paragraph (3) of this subdivision*, when a claim, or an interest in property of the debtor securing the claim, is based on a writing, a copy of the writing shall be filed with the proof of claim." (Emphasis added).

MEMORANDUM OF DECISION – 20

information.").  Thus, in this case, compliance with Rule 3001(c)(1) was not required by Midland Funding.

Moreover, the Court declines to conclude that the Debtors' objection to the Midland Funding POC or Am. POC was tantamount to a request for a copy of the writing as referenced in Rule 3001(c)(3)(B).  That Rule speaks of a "written request" which requires the "holder of a claim" to provide a copy of the agreement.  The Advisory Committee's note explains that a party in interest may obtain a copy of the agreement by making such a request, in writing, *from the holder of the claim*.  While Debtors suggest that an objection to a proof of claim is the equivalent of a written request to the holder of the claim to produce a specific writing, the Court disagrees. Other bankruptcy courts have also declined to treat claim objections as written requests for creditor documentation.  *See In re Mayne*, 2015 WL 6459995 at *3 n.3 (Bankr. M.D. Pa October 26, 2015) (debtor filed objections to proofs of claim, but "did not take advantage of Rule 3001(c)(3)(B) by making a written request to the claimants for the agreements upon which

MEMORANDUM OF DECISION – 21

the claims are based"); *In re Hill*, 2014 WL 801517 at *6 (Bankr. E.D. Ky Feb.

28, 2014) ("the Debtor has not requested a copy of the writing as allowed

by Rule 3001(c)(3)(B); instead she filed the objections in an attempt to

disallow the claims with no factual basis other than the 'lack of

documents'. . . ."); *Matter of Berardi*, 2013 WL 6096227 at *4 (Bankr. D. NJ

Nov. 20, 2013) ("[h]ere, the objectors have offered no evidence to support

their challenge, and have not requested a copy of the assignment from the

holder of the claim.  The objection [to the proof of claim] cannot be

sustained.").

The Court concludes that the Am. POC is entitled to presumptive

validity as to both amount and validity under Rule 3001(f).  Because the

Am. POC is presumptively valid, Debtors bear the initial burden of

offering proof to overcome the Rule 3001(f) presumption.  If Debtors

successfully rebut the presumption in favor of the validity, the burden

shifts to Midland Funding to prove that it is has the authority to enforce

this claim.  *In re Garvida*, 347 B.R. 697, 706 (9th Cir. BAP 2006).  In this case,

MEMORANDUM OF DECISION – 22

state contract law determines the burden of proof. *Grogan v. Garner*, 498

U.S. 279, 283 (1991). In Idaho, Midland Funding would bear the burden of

proving the amount of its claim, *U.S. Bank Nat'l Assoc. N.D. v. CitiMortgage,*

*Inc.*, 337 P.3d 605, 610 (Idaho 2014), as well as demonstrating that it has an

agency or other legal relationship with Synchrony Bank such that it is

entitled to enforce the debt. *In re Veal*, 450 B.R. 897, 919 (9th Cir. BAP

2011).

On this record, Debtors have produced no real evidence to show

that Midland Funding does not own the debt upon which the proof of

claim is based, or that Midland Credit is not properly acting as its

servicing agent.[6] Miguel's testimony showed only that he did not

recognize Midland Funding or Midland Credit, and was unaware of why

Midland Funding would assert it is his creditor. The notes to Rule

3001(3)(c) suggest the amendment was, at least in part, designed to

---

[6] It is difficult to imagine how Debtors can prove that Midland Funding
cannot enforce the claim, or that Midland Credit is not Midland Funding's agent,
without having first properly requested that the underlying contracts and
documents establishing such from the creditor.

MEMORANDUM OF DECISION – 23

accommodate debtors in exactly this situation, where their credit card or

other revolving debt has been sold to another entity, and the debtor does

not recognize the creditor filing the proof of claim for that debt. Debtors'

option was to properly request that Midland Funding provide the

supporting documentation showing its authority to enforce the debt. If

Midland Funding were then to decline or fail to do so, evidence of that fact

could be offered to overcome the presumptive validity of the proof of

claim. That did not occur here, and thus, Debtors have failed to overcome

the presumption of validity arising from Midland Funding's Am. POC.

### *Conclusion*

Ex. 201 is inadmissible.

Midland Funding's Am. POC complies with the requirements of

Rule 3001, and specifically 3001(c)(3), and therefore is entitled to a

presumption of validity pursuant to Rule 3001(f). Debtors have not

successfully rebutted that presumption. Accordingly, Debtors have not

shown that the claim should be disallowed under § 502(b)(1). A separate

MEMORANDUM OF DECISION – 24

order will be entered denying Debtors' objection to the Midland Funding

Am. POC.

Dated:  March 28, 2017

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION – 25